## REGISTER v. AULTMAN & TAYLOR COMPANY.

1. On the trial of a suit instituted by a corporation to foreclose a mortgage, the defendant is not a competent witness to testify in his own behalf of transactions or communications solely with the deceased agent of the corporation.
2. The court erred in directing verdicts in these cases for the full amount sued for, it appearing that the evidence did not demand such a finding by the jury.

Argued November 17, — Decided December 23, 1898.

Complaint on notes, etc.    Before Judge Spence.    Worth superior court.    April term, 1898.

*T. R. Perry* and *D. H. Pope*, for plaintiff in error.
*J. W. Walters* and *C. W. Fulwood*, contra.

LEWIS, J. The Aultman & Taylor Company sued Register for $1,529 principal, besides interest, upon eight promissory notes signed by the defendant and by J. S. Graves, and instituted proceedings for the foreclosure of a mortgage given by Register as security for the payment of the notes. The cases were, by consent, consolidated and tried together. The defendant answered, that he was not indebted to the plaintiff; that there was another principal to the notes who was neither sued nor accounted for, and that therefore the suit could not be maintained in its present shape; and that one J. S. Graves, after the making of the notes sued on, became the agent of the plaintiff, and as such agent, by the consent of defendant, took charge of the engine and other property for which the notes sued on were given, and sold the same to other purchasers, and plaintiff accepted the consideration received from such other purchasers, ratified said sale, and thereby released the defendant from any and all liability on account of the same. On the trial of the case the defendant admitted the genuineness of the notes and mortgage, and that the plaintiff was the owner of them. He then proposed to testify that J. S. Graves (who the defendant claimed was agent for the plaintiff in all the transactions involved in these cases up to the time of his (Graves's) death which occurred just prior to the filing of the suits, and who was a partner of the defendant at the time of and in the making

of the debts sued on), told him (defendant) that the plaintiff had agreed "to take the engine and sawmill back and cancel the trade," and that in pursuance of this statement and agreement the defendant delivered said property to Graves as the agent of plaintiff, who sold it to C. Rigger, and that Graves, as agent for the plaintiff, agreed to deliver up to the defendant all the papers here sued on, but died before doing so. The court refused to allow this testimony, because Graves was dead; and to this defendant excepted. At the conclusion of the evidence the court directed the jury to render a verdict for the plaintiff for the amount sued for, which was done; and to this direction of the court the defendant assigned error in his bill of exceptions. There was no motion for a new trial made in the case.

1. The court was clearly right in excluding the testimony of the defendant in relation to transactions or communications which were had solely with the deceased agent of the plaintiff corporation. To have admitted such testimony would have been directly in the teeth of the statute. Civil Code, § 5269 (3); *Merchants National Bank* v. *Demere,* 92 *Ga.* 735–6 (4).

2. The only other assignment of error in the bill of exceptions is, that the court erred in directing the jury to return a verdict for the plaintiff. It appears from the record in the case that there were eight notes sued on, aggregating in amount $2,325 principal, but there was only claimed in the declaration on the notes the sum of $1,529 principal, besides interest. The verdict of the jury was for the sum sued for, to wit, $1,529, "with interest and costs of suit," without stating the amount of interest. In the petition, however, for the foreclosure of the mortgage given to secure these identical notes, there is no specific amount alleged as being due upon them. The notes are accurately described, and the aggregate amount of their principal is stated in the petition for foreclosure. The verdict in that case was as follows: "We, the jury, find in favor of the plaintiff, and that the mortgage be foreclosed." Construing this verdict in the light of the pleadings, we think it was a finding for the entire amount appearing due on the face of the notes, without allowing any credits thereon. Such was evidently the construction given by the judge, who entered up

judgment for $3,119.16, besides costs, not even separating the principal from the interest, or specifying what portion of the sum mentioned was principal and what portion was interest. It does not appear from the record that the notes actually contained any entries of credit thereon, but it does appear from the testimony introduced in behalf of the plaintiff below that money had been paid on them, the witness itemizing such payments and the credits, aggregating over $700. Manifestly, therefore, the verdict of the jury in the foreclosure proceeding was not authorized by the testimony in the case, and, of course, there was error in directing such a verdict against the defendant. This error, if it were the only one, might be corrected by direction of this court that a portion of the verdict in the foreclosure proceedings be written off. The main defense, however, relied upon by the plaintiff in error is under his plea of a settlement made with Graves as the agent of the Aultman & Taylor Co., whereby it was agreed between the defendant and this agent, that the latter should take charge of the engine and other property for which the notes sued on were given, and sell the same to other purchasers; which agreement was carried out, and Graves did sell the property to another purchaser, and the company ratified the transaction. The evidence on this point is very meager for both sides. The plaintiff in error sought to prove the contract made with Graves and the transactions had with him by his own testimony, which, as above ruled, was properly excluded by the judge, Graves being dead, and it being claimed that he was dealt with in these transactions as agent of the company. There is testimony enough, however, in the record to authorize the jury to conclude that the following facts were established: That the notes sued upon were given for the purchase of a certain engine and sawmill, which were afterwards delivered by plaintiff in error to Graves, and which were sold by Graves to one Rigger; and that Rigger gave a mortgage on this property to the Aultman & Taylor Company, which mortgage was accepted by the company and actually foreclosed by it for the purpose of enforcing payment of the debt. It further appears that after Graves had so received the engine from plaintiff in error, Graves sent Register

a message to the effect that the matter would soon be arranged and the papers delivered up, evidently referring to the notes sued on in this case.  In behalf of the company there was testimony to the effect that this engine, and other property, embraced in the mortgage given by Rigger, had been destroyed by fire before foreclosure, and no money was realized from the sale; that the company had empowered Graves to sell this property, with the understanding that the proceeds of the sale should be applied to the notes sued on in this case.  The witness who testified to these facts about this understanding between Graves and the company stated in conclusion that he got this information from the Aultman & Taylor Company, whom he represented in the transaction.  It does not appear that any member of that company was introduced, nor does it appear that the nature of this transaction testified to in behalf of the company was ever made known to the plaintiff in error, or that he ever assented to a sale of the engine he had bought with the understanding that his notes should simply be credited with the proceeds.  There was also testimony tending to show that Graves was the agent of the company for the purpose of selling engines.

It is true that the power in an agent to sell property of his principal does not carry with it a power to rescind the contract of sale; and the power to collect a debt does not, of itself, also include authority to compromise the claim.  The theory of the company in this case on the trial seems to have been that it simply gave Graves permission to sell this machinery, with the understanding that the proceeds of sale when paid to it would be credited on the notes sued.  But the jury might have inferred from the facts testified to that the machinery was really delivered by Register, the plaintiff in error, to Graves as agent of the company; that as such agent Graves sold the property in the name of his principal, and took from the purchaser a mortgage made directly to the company to secure the purchase-money; and that while this might have exceeded the authority of Graves, yet the company ratified the transaction by an acceptance of the mortgage, and a foreclosure of the same to enforce its payment.  If such were the case, then this was tanta-

mount to a delivery of the property by plaintiff in error to the company, and a resale of it by the latter to another. Without, more, this, we think, would have the effect of rescinding the contract of sale, and of releasing plaintiff in error from his obligation thereunder. The only testimony that tends to sustain the theory of defendant in error above mentioned is that of its agent, Fulwood, who qualified his testimony on the subject with the following statement: "I was familiar with the whole transaction. I got my information from the Aultman & Taylor Company whom I represented in this transaction." True his testimony was not objected to, but it apparently being mere hearsay, in determining whether or not it was sufficient to demand a verdict, it is proper to consider its inherent weakness; and, as the jury might have inferred that the theory insisted on by plaintiff was overcome by other facts and circumstances in the case touching the subsequent conduct of the company's agent, Graves, as well as the action of the company in ratifying the sale made by him in the name of the company; we think the issue as to whether or not there had really been a rescission of this contract of sale, so far as the plaintiff in error was concerned, should have been submitted to a jury under proper instructions from the court.

There was some testimony in the case relating to payments made by plaintiff in error on this machinery, which were not, admitted as credits by the company's agent. It appears from the record that the original pleas filed by the defendant were lost after the trial, and copies established. Certified copies of these established copies appear in the record, and these contained pleas of payment not admitted as credits by the plaintiff below. It appears, however, that since copies of the pleas were established below, the original plea was found by the clerk, and he also sent up a certified copy of that original which contains no plea of credits. We can not say, therefore, under the pleadings as they stood on the trial, that this issue should have been submitted to the jury. Considering, however, the defense that seems to have been relied on in the case, and the testimony bearing thereon, while very meager, as above indicated, yet it did not *demand* a verdict for the plaintiff for

the full amount sued for; and in view of this fact we think the court erred in directing a verdict.

*Judgment reversed. All concurring, except Cobb, J., absent.*